Diana L. Fitzgerald, Esq. (California Bar No. 170405)
Diana@filawyers.com
FITZGERALD & ISAACSON, LLP
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, CA 90212
Telephone:  (310) 480-0090
Facsimile:   (310) 402-0306

Nima Tahmassebi, Esq. (Florida Bar No. 121690)
ntahmassebi@pbyalaw.com
Benjamin Reiss, Esq. (Florida Bar No. 985643)
breiss@pbyalaw.com
PERLMAN, BAJANDAS, YEVOLI & ALBRIGHT, P.L.
283 Catalonia Avenue, Suite 200
Coral Gables, FL 33134
Telephone:  (305) 377-0086
Facsimile:   (305) 377-0781

*Attorneys for Plaintiffs LCC Enterprises LLC and Daniel Cohen*

# IN THE UNITED STATES DISTRICT COURT FOR THE
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LCC ENTERPRISES LLC, a Delaware limited liability company, and DANIEL COHEN, an individual.<br><br>Plaintiffs,<br><br>vs.<br><br>ROMAN CRESTO, an individual, JOHN CRESTO, an individual, and STRYDER HOLDINGS LLC, a California limited liability company,<br><br>Defendants. | Case No. 22-CV-1944 DMS (BGS)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION TO DISQUALIFY DEFENDANTS' COUNSEL STUBBS ALDERTON & MARKILES, LLP**<br><br>Dept.:   13A<br>Judge:  Hon. Dana M. Sabraw<br>Date:   April 28, 2023<br>Time:   1:30 p.m.<br><br>NO ORAL ARGUMENT PURSUANT TO CIVIL LOCAL RULE 7.1(d)(1) |

# **TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................... 4

II.   APPLICABLE LAW: THE SUBSTANTIAL RELATIONSHIP TEST ........ 6

III.  RELEVANT FACTUAL BACKGROUND .................................................. 8

    A. Plaintiffs' Claims At Issue In This Case ........................................ 8

    B. SAM's Representation Of The Companies ................................... 9

    C. SAM's Work for Plaintiffs and the Companies and on the Open Matters Are Substantially Related To The Central Issues In The Current Case. 12

IV.  SAM MUST BE DISQUALIFIED UNDER RPC 3-310 BECAUSE ITS PRIOR REPRESENTATION OF THE COMPANIES IS SUBSTANTIALLY RELATED TO THE CENTRAL ISSUES IN THIS CASE ......................... 13

    A. SAM's Prior Representation Of Plaintiffs And The Companies Is Substantially Related To The Pending Case Where SAM Is Attempting To Represent Parties Adverse To Plaintiffs .................... 14

    B. Because SAM Attorneys Who Worked On The Companies' Matters Must Be Disqualified, The Whole SAM Firm Must Be Disqualified 19

V.   CONCLUSION ........................................................................................ 19

# TABLE OF AUTHORITIES

**Cases**

*All Am. Semiconductor, Inc. v. Hynix Semiconductor, Inc.*, No. C 07-1200, 2008 U.S. Dist. LEXIS 106619, at *21 (N.D. Cal. Dec. 18, 2008) .................................... 17, 18

*Beltran v. Avon Prods.*, 867 F. Supp. 2d 1068, 1083 (C.D. Cal. 2012) ........................ 19

*Brand v. 20th Century Ins. Co.*, 124 Cal. App. 4th 594, 607 (2004) ............................... 8

*City & Cty. Of San Francisco v. Cobra Solutions, Inc.*, 38 Cal. 4th 839, 847 (2006) ... 8

*City Nat'l Bank v. Adams*, 96 Cal. App. 4th 315, 327 (2002) ........................................ 8

*Elan Transdermal Ltd. v. Cygnus Therapeutic Sys.*, 809 F. Supp. 1383, 1392 (N.D. Cal. 1992) .................................................................................................................. 8

*Farris v. Fireman's Fund Ins. Co.*, 119 Cal. App. 4th 671, 688-689 (2004) ............... 18

*Flatt v. Super. Ct.*, 9 Cal. 4th 275, 283 (1994) ........................................................ 7, 15

*Hitachi, Ltd. v. Tatung Co.*, 419 F. Supp. 2d 1158, 1160 (N.D. Cal. 2006) ............ 6, 19

*Jessen v. Hartford Cas. Ins. Co.*, 111 Cal. App. 4th 698, 713 (2003) ........................... 8

*Med-Trans Corp., Inc. v. City of Calif. City*, 156 Cal. App. 4th 655, 665 (2007) ... 8, 19

*Morrison Knudsen Corp. v. Hancock, Rothert & Bunshoft*, 69 Cal.App.4th 223 (1999) ................................................................................................................................ 18

*O'Gara Coach Co., LLC v. Ra*, 30 Cal. App. 5th 1115, 1124(2019) .......................... 15

*Trone v. Smith*, 621 F.2d 994, 999 (9th Cir. 1980) ........................................................ 8

**Other Authorities**

California Business and Professions Code § 17200 ....................................................... 9

**Rules**

Cal. R. Prof. Conduct 1.6(a) ........................................................................................... 7
Cal. R. Prof. Conduct 1.7(a)-(b) ..................................................................................... 7
California Rule of Professional Conduct 1.7 ................................................................. 6

## I. INTRODUCTION

Plaintiffs LCC Enterprises LLC ("LCC") and Daniel Cohen ("Mr. Cohen") (collectively, "Plaintiffs") sued Defendants Roman Cresto, John Cresto (together, the "Crestos"), and Stryder Holdings LLC ("Stryder") (collectively, "Defendants") for four different causes of actions. Central to Plaintiffs' claims are Defendants' misrepresentations and omissions concerning the financial status and open liabilities of their former companies, Empire Ecommerce LLC ("Empire") and Onyx Distribution LLC ("Onyx")[1] (collectively, the "Companies"), in connection with the purchase and sale of the Companies to Plaintiffs.

Stubbs Alderton & Markiles, LLP ("SAM"), which is representing Defendants in this lawsuit, previously represented Mr. Cohen and LCC, as owner of Empire and Onyx, after the sale of the Companies to Mr. Cohen until November 30, 2022.  On that date, Mr. Cohen revealed to SAM's litigation associate, Blaine O'Malley, his concerns about the Companies and Defendants along with his confidential strategies related to pursuing litigation against the Crestos and Stryder. Later that same day with Mr. Cohen's

---

[1] Onyx is a wholly owned subsidiary of Empire that was indirectly acquired by LCC through its acquisition of Empire. Defendants sold Empire to LCC and Mr. Cohen is the owner and principal of LCC.

confidential and privileged communications well in hand, SAM elected to terminate its representation of Empire and Onyx. (Declaration of Daniel Cohen "Cohen Decl." ¶¶ 12-13.)

SAM is conflicted and must be disqualified from representing Defendants adversely to Plaintiffs in this case. The substantial relationship between SAM and Plaintiffs is simply too significant to ignore as (1) SAM represented the Companies in connection with the sale of the Companies to Plaintiffs; (2) several of SAM's attorneys are significant material witnesses in this lawsuit because of their intimate knowledge of the Companies' open liabilities and financial situation, which they gained from representing the Companies, including in connection with the sale of the Companies to LCC; (3) SAM has intimate knowledge of all parties involved in the case and possession of confidential and privileged information belonging to Empire, which includes the Companies' open liabilities and financial situation, and which was gained from SAM's representation of the Companies and their business dealings; and (4) Plaintiffs would suffer substantial and irreparable prejudice if SAM continues to represent Defendants, given that the Companies' business dealings are among the central issues in this case.

On February 24, 2023, Plaintiffs' counsel spoke with Defendants' counsel by video conference and demanded that SAM withdraw from this case. After not receiving a response from SAM, Plaintiffs' counsel reiterated its demand on March 15, 2023 and

SAM refused to withdraw, thereby requiring the filing of this motion. The Court should disqualify SAM, thereby protecting Plaintiffs as former SAM clients. Plaintiffs would be severely prejudiced by having to litigate this case against their former counsel. Defendants, on the other hand, would hardly be prejudiced at all by disqualification as they are also represented by another law firm, Wilson Elser Moskowitz Edelman & Dicker, LLP ("WEMED"), and Defendants have yet to file a response to Plaintiffs' First Amended Complaint. Lastly, Plaintiffs have shared enough of their litigation strategy about Defendants with SAM, and SAM has additional confidential and privileged information from its representation of Empire, that would make it impossible for SAM to represent Defendants without a significant risk of using or disclosing confidential and/or privileged information, and Defendants using it for their benefit against Plaintiffs. Thus, SAM must be disqualified from this lawsuit.

## II.     APPLICABLE LAW: THE SUBSTANTIAL RELATIONSHIP TEST

In this Court, motions to disqualify counsel are decided under state law. *Hitachi, Ltd. v. Tatung Co.*, 419 F. Supp. 2d 1158, 1160 (N.D. Cal. 2006). California Rule of Professional Conduct 1.7 provides as follows:

> **(a)** A lawyer shall not, without informed written consent from each client and compliance with paragraph (d), represent a client if the representation is directly adverse to another client in the same or a separate matter.

> **(b)** A lawyer shall not, without informed written consent from each affected client and compliance with paragraph (d), represent a client if there is a significant risk the lawyer's representation of the client will be materially limited by the lawyer's responsibilities to or relationships with another client, a former client or a third person, or by the lawyer's own interests.

Cal. R. Prof. Conduct 1.7(a)-(b). Similarly, Rule 1.6 reads:

> **(a)** A lawyer shall not reveal information protected from disclosure by Business and Professions Code section 6068, subdivision (e)(1) unless the client gives informed consent, or the disclosure is permitted by paragraph (b) of this rule.

Cal. R. Prof. Conduct 1.6(a).

To demonstrate a disqualifying conflict of interest, a client does not need to establish that its former counsel actually obtained or presently possesses confidential information material to the present case. Instead, California law applies the "substantial relationship" test to determine whether confidential information has been imparted in the course of a prior representation. A "substantial relationship" exists whenever the subject matters of the prior representation and current matter are linked in some rational manner. *See Flatt v. Super. Ct.*, 9 Cal. 4th 275, 283 (1994). Successive representations are "substantially related" where the facts support a "rational conclusion that information material to the evaluation, prosecution, settlement or accomplishment of the former representation given its factual and legal issues is also material to the evaluation, prosecution, settlement or accomplishment of the current representation

given its factual and legal issues. *Jessen v. Hartford Cas. Ins. Co.*, 111 Cal. App. 4th 698, 713 (2003) (internal citations omitted); s*ee also Trone v. Smith*, 621 F.2d 994, 999 (9th Cir. 1980) ("Substantiality is present if the factual context of the two representations are similar or related.").

"When a substantial relationship between two representations is established, the attorney is automatically disqualified from representing the second client." *City & Cty. Of San Francisco v. Cobra Solutions, Inc.*, 38 Cal. 4th 839, 847 (2006). In other words, the presumption that the former counsel obtained confidential information material to the current case is conclusive if a substantial relationship between the prior representation and current case is established. *See, e.g., Elan Transdermal Ltd. v. Cygnus Therapeutic Sys.*, 809 F. Supp. 1383, 1392 (N.D. Cal. 1992); *City Nat'l Bank v. Adams*, 96 Cal. App. 4th 315, 327 (2002). Further, if a substantial relationship between the two representations is established, the length of time since the former representation is irrelevant. *See, e.g., Brand v. 20th Century Ins. Co.*, 124 Cal. App. 4th 594, 607 (2004).

Finally, it is well-established that the mandatory disqualification that results from a finding of a substantial relationship extends vicariously to the entire firm. *See Med-Trans Corp., Inc. v. City of Calif. City*, 156 Cal. App. 4th 655, 665 (2007).

## III. RELEVANT FACTUAL BACKGROUND

### A. Plaintiffs' Claims At Issue In This Case

Daniel Cohen is an entrepreneur who acquired Defendants' interest in the Companies through his company, LCC. (Cohen Decl. ¶ 2.) After the Membership Interest Purchase Agreement (the "Agreement") was executed, the Crestos disclosed a file of legal liability that subsequently led Mr. Cohen to discover the Companies were rife with numerous undisclosed claims, liabilities, open disputes, and issues that exposed the Companies and Plaintiffs to significant losses. (*Id.* ¶¶ 3-10.) When Mr. Cohen demanded rescission of the Agreement, the Crestos refused to admit fault or rescind the transaction, even though they expressly represented in the Agreement that there were no "pending or threatened" claims or liabilities, and thus, were in material breach of the Agreement from prior to execution and afterward, including before and after the Effective Date provided in the Agreement. (*Id.* ¶ 11.)

As a result, Plaintiffs were compelled to file their original Complaint against Defendants on December 8, 2022. On March 24, 2023, Plaintiffs filed their First Amended Complaint alleging fraud in the inducement (Count I), negligent misrepresentation (Count II), breach of contract (Count III), and violation of the California Business and Professions Code § 17200, *et seq.* (the "Unfair Competition Law" or "UCL") (Count IV). (Doc. No. 19.)

**B.     SAM's Representation Of The Companies**

From November 14, 2022 through November 30, 2022, SAM represented Mr.

Cohen in his capacity as owner of the Companies. (*Id.* ¶ 7.) In fact, Defendant Roman Cresto himself introduced Mr. Cohen to attorneys at SAM (including Daniel Rozansky and Blaine O'Malley, who are currently Defendants' counsel of record in this lawsuit) in a November 9, 2022 e-mail and urged the representation to proceed (stating "we want to introduce you so you can start working together"). (I*d.* ¶ 6, Ex. 2.) During that time, SAM provided Mr. Cohen with legal services related to, among other things, the open matters that were undisclosed to Mr. Cohen prior to the acquisition of the Companies. More specifically, SAM and Mr. Cohen exchanged confidential and privileged information regarding the following open matters:

- Dispute with Michael Korby and Empire;
- Dispute with Nathan Morris and Onyx;
- Dispute with Christine Rodriguez and the Companies;
- *Empire Ecommerce LLC, et al. v. Daanish Azim*, American Arbitration Association Case No. 01-22-0001-0312; and
- Chapter 7 Voluntary Bankruptcy Petition of Daanish Azim, U.S. Bankruptcy Court for the Northern District of Illinois, Case No. 22-bk-09291.

(collectively, the "Open Matters"). (*Id.* ¶¶ 2, 7-8.) While representing the Companies (and Mr. Cohen as their owner), SAM attempted to negotiate settlements in the Korby,

Morris, and Rodriguez disputes, and exchanged multiple phone calls and e-mail correspondences with Mr. Cohen regarding those same disputes. (*Id.* ¶ 8, Comp. Ex. 3.) As with the November 9, 2022 Roman Cresto e-mail recommending that SAM represent Mr. Cohen, Daniel Rozansky and Blaine O'Malley, Defendants' current counsel of record in this lawsuit, were copied on these e-mail correspondences. (*Id.*)

Once Mr. Cohen realized the Companies' open liabilities were far more significant than just the Open Matters, he decided to take legal action against the Crestos. (*Id.* ¶¶ 9-10.) On November 30, 2022, Mr. Cohen reached out to Ms. O'Malley and expressed his pointed concerns about the open liabilities associated with the Companies. (*Id.* ¶ 12.) Mr. Cohen revealed to Ms. O'Malley his privileged litigation strategy related to pursuing a lawsuit against the Crestos, and requested further guidance from SAM's attorneys in order to accomplish his goal. (*Id.*) After this call and later that same day, Mr. Cohen received a termination letter from Daniel Rozansky at SAM providing the following:

> Dear Dan,
>
> Please take notice that, pursuant to the California Rules of Professional Conduct, Rule 1.16(b), we hereby withdraw as legal counsel for Empire Ecommerce LLC ("Empire") and Onyx Distribution LLC ("Onyx"). Effective immediately, we will no longer be representing Empire or Onyx in connection with any legal matters.

> The following is a summary of the disputes in which we were representing Empire/Onyx prior to the sale of Empire to LCC Enterprises LLC, their status, and other relevant information:

SAM's termination letter went on to provide Mr. Cohen with a summary list of the Open Matters that are now central to this lawsuit. (*Id.* ¶ 13, Ex. 5.) As Ms. O'Malley is an associate rather than a partner at SAM, it is obvious she did not make the decision for SAM to terminate this representation. Nonetheless, the timing of the termination demonstrates she had discussed Mr. Cohen's communications regarding his privileged litigation strategy with Daniel Rozansky, who signed the letter and is a partner at SAM. A week later, on December 8, 2022, Plaintiffs' counsel, Perlman, Bajandas, Yevoli & Albright, PL sent SAM a demand letter requesting specific relief from Defendants. The next day, on December 9, 2022, Plaintiffs' counsel received a formal written response from SAM on behalf of Defendants where, among other things, SAM expressly reserved all rights, claims, and remedies on behalf of the Defendants. (*Id.* ¶ 14.)

    **C.**    <u>**SAM's Work For Plaintiffs And The Companies And On The Open Matters Are Substantially Related To The Central Issues In The Current Case**</u>

SAM has been involved in this case since Plaintiffs and Defendants first entered into the Agreement all the way through the initiation of this lawsuit. Following the full execution of the Agreement, Empire, Onyx, as well as SAM, all transitioned over to Mr. Cohen's new ownership. *(Id.* ¶¶ 2-7.) As mentioned *supra*, it was only after the

Agreement was executed that Mr. Cohen first learned about the Open Matters from an internal memorandum titled "Stubbs Alderton & Markiles, LLP's Open Matters for Empire Ecommerce LLC and Onyx Distribution LLC." (*Id.* ¶ 4, Ex. 1.) Importantly, this document was drafted by SAM's counsel of record, Dan Rozansky, and provided to Mr. Cohen as part of SAM's representation of him, in his capacity as owner of the Companies. While Mr. Cohen was represented by SAM, Mr. Cohen provided his then-counsel (SAM) with his litigation strategies related to the Open Matters and pursuing legal action against the Crestos. (*Id.* ¶¶ 8, 12.)

      D.    **SAM's Appearance In This Case And Refusal To Withdraw**

Upon meeting with SAM for the first time over a meet and confer on February 24, 2023, Plaintiffs' counsel promptly demanded SAM withdraw from representing Defendants in this case in light of its prior representation of Mr. Cohen as owner of the Companies and the other issues described above. A SAM attorney and counsel of record, John R. De La Merced, informed Plaintiff's counsel that he would discuss Plaintiffs' demand internally and revert back with a response. On March 15, 2023, after still not receiving a response from SAM, Plaintiffs' counsel made its second demand for SAM to withdraw as counsel. SAM refused to withdraw voluntarily from this case.

**IV.    SAM MUST BE DISQUALIFIED UNDER RPC 3-310 BECAUSE ITS PRIOR REPRESENTATION OF THE COMPANIES IS SUBSTANTIALLY RELATED TO THE CENTRAL ISSUES IN THIS CASE**

A. **SAM's Prior Representation Of Plaintiffs And The Companies Is Substantially Related To The Pending Case Where SAM Is Attempting To Represent Parties Adverse To Plaintiffs**

SAM's representation of Defendants in this action plainly violates California Rule of Professional Conduct 1.7. SAM cannot dispute that the Companies are its former clients or that it previously advised Mr. Cohen in his capacity as owner of the Companies through LCC. Nor, can SAM dispute that the interests of its current clients, the Crestos and Stryder, are materially adverse to those of its former clients, Plaintiffs. Neither Plaintiffs nor the Companies have consented to SAM's adverse representation of Defendants in this matter as required by Rule 3-310(E)[2] . (*Id.* ¶ 16.)

SAM's former representation of the Companies, and thereby Plaintiffs, is substantially related to its current representation of Defendants and warrants disqualification for, at least, *four* distinct reasons.

First, SAM represented the Companies in connection with the sale of the Companies to Plaintiffs. During this period of representation, SAM's attorneys

---

[2] Rule 3-310(E) states: "A member shall not, without the informed written consent of the client or former client, accept employment adverse to the client or former client where, by reason of the representation of the client or former client, the member has obtained confidential information material to the employment."

performed work related to completing the sale of the Companies knowing that, at a minimum, the ongoing Open Matters existed. SAM's attorneys cannot dispute that they owed a duty to Defendants while facilitating the sale of the Companies and that this duty conflicted with their eventual duty to represent Plaintiffs as the new owners of the Companies, nor can they dispute that substantiality is present here in light of the fact that the undisclosed Open Matters are a central aspect of this lawsuit.

Thus, disqualification is required. *See O'Gara Coach Co., LLC v. Ra*, 30 Cal. App. 5th 1115, 1124 (2019) ("It is well established that an attorney, after severing his or her relationship with a client, 'may not do anything which will injuriously affect his former client in any matter in which he formerly represented him nor may he at any time use against his former client knowledge or information acquired by virtue of the previous relationship.'") (internal citations omitted); *Flatt v. Superior Court*, 9 Cal. 4th 275, 283 (1994) ("Where the requisite substantial relationship between the subjects of the prior and the current representations can be demonstrated, access to confidential information by the attorney in the course of the first representation (relevant, by definition, to the second representation) is *presumed* and disqualification of the attorney's representation of the second client is mandatory; indeed, the disqualification extends vicariously to the entire firm.").

Second, several of SAM's attorneys, including attorneys of record Daniel

Rozansky and Blaine O'Malley, are material witnesses in this lawsuit because of their intimate knowledge of the Companies' open liabilities and financial situation, which they gained from representing the Companies, including in connection with the sale of Empire to LCC. SAM's knowledge of the Open Matters is evident based on the internal memorandum drafted by SAM attorney, Mr. Rozansky titled "Stubbs Alderton & Markiles, LLP's Open Matters for Empire Ecommerce LLC and Onyx Distribution LLC", which was presented to Mr. Cohen only a few days after his execution of the Agreement. (*Id.* ¶ 3.) The testimony of Mr. Rozansky and Ms. O'Malley is necessary to resolve disputed issues of fact in this lawsuit, and their testimony will be more reliable and credible than other evidence, such as documents or testimony from Defendants who are facing fraud-related claims not only from Plaintiffs, but also from their former clients.[3]

      Third, SAM possesses confidential information from its representation of the

---

[3] *See LaMont Henry vs. John Cresto, Roman Cresto, et al.,* Case No. 37-2023-00003691-CU-FR-NC, Superior Court of the State of California for the County of San Diego, North County Division, asserting claims against Defendants for (1) Fraud – Intentional Misrepresentation, (2) Fraud – Concealment, and (3) Fraud – Negligent Misrepresentation.

Companies, including from prior to when Plaintiffs purchased the Companies, that would be highly material (and in fact inextricably intertwined) to the instant case. SAM's intimate knowledge of all parties involved in the case and possession of both confidential and privileged information belonging to Empire, which was gained from SAM's representation of the Companies and their business dealings, is highly prejudicial, given that the Companies' business dealings are among the central issues in this case. SAM's knowledge of these business dealings central to the issues in this case and possession of privileged information, gives them an unfair advantage after having provided legal advice to parties on both sides of the aisle. This information will be used by SAM not only to support Defendants' case, but also, to substantially undermine Plaintiffs' case. There is no way in which SAM, in its representation of Defendants in this case, can simply shield off or otherwise, not consider material confidential and/or privileged information that it knows from its representation of the Companies. Yet, the confidential and/or privileged information that SAM has acquired from representing the Companies belongs to the Companies, and the Companies do not consent to such information being disclosed or used in any way.

  Courts have made it clear that "there are situations where confidential information obtained through the representation of a third-party could lead to attorney disqualification." *All Am. Semiconductor, Inc. v. Hynix*

*Semiconductor, Inc.*, No. C 07-1200, 2008 U.S. Dist. LEXIS 106619, at *21 (N.D. Cal. Dec. 18, 2008) (citing *Morrison Knudsen Corp. v. Hancock, Rothert & Bunshoft*, 69 Cal.App.4th 223, 232-33 (1999)). This is one such situation.

Fourth and finally, Plaintiffs would suffer substantial and irreparable prejudice if SAM continues to represent Defendants, given that the Companies' business dealings are among the central issues in this case. SAM's intimate representation of Plaintiffs and Defendants throughout their confidential business dealings gives the firm an unfair advantage in the case and is plainly incestuous. The potential harm caused by SAM's ongoing representation of Defendants in this lawsuit is significantly adverse to Plaintiffs' interests and no other remedy, such as a protective order or disqualification of certain attorneys from handling specific issues, would be sufficient to address this conflict. In short, Plaintiffs will be severely prejudiced if SAM is permitted to turn on its former clients and litigate adversely to Plaintiffs armed with such insights and information, sometimes referred to as a former client's "playbook." *See e.g.*, *Farris v. Fireman's Fund Ins. Co.*, 119 Cal. App. 4th 671, 688-689 (2004) (disqualifying former counsel for insurance company based on former counsel's possession of former client's "playbook" regarding handling of insurance coverage claims, practices and procedures).

For all the foregoing reasons, disqualification is required, as allowing SAM to

continue to represent Defendants in this case "would undermine the countenance of professionalism, which the substantial relationship test is intended to protect." *Beltran v. Avon Prods.*, 867 F. Supp. 2d 1068, 1083 (C.D. Cal. 2012).

### B. Because SAM Attorneys Who Worked On The Companies Matters Must Be Disqualified, The Whole SAM Firm Must Be Disqualified

Under California law, where the disqualification of individual attorneys is required, the disqualification of those attorneys' firm is also required. *See Med-Trans Corp.*, 156 Cal. App. 4th at 665 (explaining that "the disqualification extends vicariously to the entire firm"). Here, two of SAM's attorneys, Mr. Rozansky and Ms. O'Malley, who did work for the Companies and Mr. Cohen, are still at SAM and are currently attorneys of record on behalf of Defendants. Accordingly, the entire SAM firm must be disqualified. *See e.g., Hitachi*, 419 F. Supp. At 1164.

## V. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court disqualify SAM from any further representation of Defendants in this litigation.

Dated: March 27, 2023

**FITZGERALD & ISAACSON, LLP**

By: _/s/ Diana L. Fitzgerald_
    Diana L. Fitzgerald

**PERLMAN, BAJANDAS, YEVOLI & ALBRIGHT P.L.**

Nima Tahmassebi, Esq. *(pro hac vice)*
Benjamin Reiss, Esq. *(pro hac vice)*

*Attorneys for Plaintiffs LCC Enterprises LLC and Daniel Cohen*